514    APPELLATE COURTS OF ILLINUIS.

Henning Brewing Co. v. A., T. & S. F. Ry. Co., 150 Ill. App. 514.

## The Henning Brewing Company, Appellant, v. The Atchison, Topeka and Sante Fe Railway Company, Appellee.

### Gen. No. 5,166.

1. NEGLIGENCE—*what does not support presumption of wilfulness.* The fact alone that a train was running within the limits of a city at a speed in excess of an ordinance thereof is not sufficient to support a presumption of wilfulness.

2. VERDICTS—*when not disturbed.* A verdict will not be set aside on review as against the weight of the evidence unless clearly and manifestly so.

Action in case. Appeal from the Circuit Court of Marshall county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed October 19, 1909.

TRACEY & TRACEY and E. D. RICHMOND, for appellant.

BARNES & MAGOON and LEE F. ENGLISH, for appellee; ROBERT DUNLAP, of counsel.

MR. JUSTICE WILLIS delivered the opinion of the court.

The Henning Brewing Company, appellant, owned a warehouse in which it stored beer, ice and other commodities incident to its business, situated on land leased from the Atchison, Topeka and Santa Fe Railway Company, appellee, on its right of way at Toluca. The lease provided for the payment of $1 per year rent, and contained a stipulation exempting appellee from liability for damages to appellant's property arising from the negligence of appellee's servants or agents or otherwise. About one o'clock A. M., April 7, 1908, a west bound passenger train, passing through Toluca left the track near the switch, ran some distance along a side track, and struck and partially demolished appellant's warehouse. The train was wrecked, the engineer killed, and the fireman injured. About two hours later, a wrecking train

SECOND DISTRICT—OCTOBER, 1909.     515

Henning Brewing Co. v. A., T. & S. F. Ry. Co., 150 Ill. App. 514.

arrived, the track was cleared, the remaining portions of the wrecked building were pulled down, and the material was piled upon the right of way. Refrigerator cars were brought, in which to place the ice and beer. Later, with appellant's consent, appellee had a part of the beer hauled to the Schlitz Brewing Company's plant near by, from which it was afterwards taken by appellant and sold. The Brewing Company brought this suit against appellee to recover damages for the destruction and conversion of its property. The declaration contained four counts in case, and one in trover. The first count in case charged general negligence in running the train. The other three counts in case charged wilful and wanton negligence in driving the train, and the fourth also charged the violation of an ordinance limiting the speed of trains in the city of Toluca to ten miles per hour. The fifth count charged that appellant was possessed of a certain frame building, ice, beer, and other property contained therein, and lost the same; that appellee found the property and converted it to its own use. There was a plea of not guilty. At the close of appellant's testimony in chief, on appellee's motion, the court directed a verdict on the first four counts; and at the conclusion of all the testimony the jury returned a verdict for appellee on the fifth count. A motion for a new trial was denied, and judgment was entered for appellee, from which the brewing company appeals.

Appellant does not deny that appellee might, by contract, exempt itself from liability for damages arising from any negligence of its agents or servants other than that which was wilful and wanton, but contends that there was evidence of wilful and wanton negligence on the part of appellee's engineer and fireman, and that the court erred in directing a verdict on the counts in case, for the reason that this evidence should have been submitted to the jury for them to determine whether or not such negligence was the cause of the injury.

The only proof as to the speed and management of the train was contained in the testimony of the fireman who said that they were about seven minutes late at Toluca, and were not trying to make up time; that he looked out for the switch light near the warehouse as they were entering town, probably two or three hundred feet or farther away, and did not see it; that before he had time to speak to the engineer he felt the engine strike the switch, and next the engine turned over; that the engineer was looking out and shut off steam before he whistled into town, just about the time they reached the whistling post a quarter of a mile east of the switch; that he let the engine drift a little way, and then applied his brakes; that he made the first reduction then and a second that put on the full braking power at the switch; and that they were running from fifteen to twenty-five miles per hour. He said they could have seen the switch light about a quarter of a mile away, and by applying the brakes and reversing the engine, could have stopped within that distance; that by applying the emergency they could stop in pretty short order.

Appellant argues that the train must have been running fifty or sixty miles per hour within the city limits; that it was the duty of the engineer and fireman to have looked out for the switch light within a distance in which they could have stopped the train if necessary before reaching the switch, and that they were bound to stop before coming to the switch when they discovered that there was no light there; and that it was their duty to run the train through the city so as to have it under control; and that their conduct showed such want of care for the rights of others as to justify the presumption of wilfulness.

It is manifest that the train was running within the city limits in violation of an ordinance limiting the speed of trains therein to ten miles per hour, but that fact alone is not sufficient to support a presumption of wilfulness. Illinois Central Railroad Company v. Hetherington, 83 Ill. 510; Blanchard v. Lake

Shore and Michigan Southern Railway Company, 126 Ill. 416; Illinois Central Railroad Company v. Eicher, 202 Ill. 556.

Thompson in his Commentaries on the Law of Negligence, vol. 1, sec. 20, says: "The true conception of wilful negligence involves a deliberate purpose not to discharge some duty necessary to the safety of the person or property of others, which duty the person owing it assumed by contract, or which is imposed upon the person by operation of law." There was no evidence that there was any wilful or intentional failure on the part of the engineer and fireman to perform their duty, or any want of care of, or indifference to, the safety of the property of appellant; and since their own safety was involved, there can be no presumption that the engineer lost his life and the fireman was injured through wilful or intentional disregard of duty. Chicago, Rock Island & Pacific Railway Company v. Hamler, 215 Ill. 525. Appellee had the right to contract with appellant exempting self from liability for damages resulting from any negligence, not wilful or wanton, of its agent or servants (Chicago, Rock Island & Pacific Railway Company v. Hamler, supra; Blank v. Illinois Central Railroad Company, 182 Ill. 332), and as there was no evidence of wilful or wanton negligence on the part of appellee's servants or agents, the court did not err in directing a verdict on the counts in case.

Appellant urges that the verdict on the count in trover is contrary to the evidence.

There is evidence that appellee took possession of the property and tore down what was left standing of the warehouse; that its division superintendent promised appellant's vice-president that appellee would pay for all damages done, and told him to send the bill to a certain officer of the appellee in Chicago and it would be paid; that appellee sent for refrigerator cars for the purpose of taking possession of the beer and ice. The division superintendent denied that he promised that appellee would pay the damages and

518 APPELLATE COURTS OF ILLINOIS.

Henning Brewing Co. v. A., T. & S. F. Ry. Co., 150 Ill. App. 514.

said that he told appellant's vice-president that he had nothing to do with it, and that upon his asking who had, he gave him the name and address of the assistant general freight agent in Chicago and the general claim agent at Topeka, Kansas. Appellee introduced evidence showing that it sent for the refrigerator cars, not for the purpose of taking possession of the beer and ice, but for the supposed accommodation of appellant who did not use them. Appellant's vice-president testified that the building after it had been struck by the train was of no value to them. It was not denied that the timbers and boards of which the building was constructed were left on the right of way where appellant could take them. Appellee showed that it pulled down the building or the parts remaining standing because it was overhanging in such a manner as to be dangerous to the workmen. It showed that appellant came and got the beer appellee removed to Schlitz Brewing Company plant, and sold it to its customers.

The only ruling of the trial court complained of by appellant is the giving of appellee's fifth instruction. The criticism to that instruction is, that it forbade the jury finding for appellant even if the evidence showed that appellee assumed control of the property and destroyed it or allowed it to be sold or misused so as to be valueless. This defect was cured by the first instruction given for appellant which told the jury that if appellee wrongfully took the property into its possession, and while in its possession, the same was lost, stolen, or destroyed, before the commencement of this suit, that would constitute a wrongful conversion of the property, and they should find appellee guilty.

The jury decided the conflict in the evidence in favor of appellee, and the trial court approved their finding. No material errors of law have intervened, and we shall not disturb their verdict.

The judgment is affirmed.

*Affirmed.*